1st. Upon the principle that the oldest grant holds *Page 459 
the land conclusively in a court of law; and that nothing but questions respecting boundary can occur, it was contended that the evidence offered by the plaintiff did not establish the beech and elm as the south-east corner of John Nelson's first tract, and consequently the south-west of the plaintiff's. The claim of the plaintiff is no otherwise established than by reference to Nelson's south-east corner. How is that ascertained? It is said, by finding marks at H G and at this place. There is no other proof. No person is produced, who made any of these marks, or saw them made. The survey of John Nelson's second tract and John Armstrong's were made on the 11th and 12th of March, 1786. Col. Weakly was one of the persons along at the time the corners were made. Why is he not produced? There are many reasons why the beech at A is not the south-east corner of Nelson's first tract called for by Polk. This place is called for in Nelson's grant as being about three and a half miles nearly north from the mouth of Robertson's Creek. Mr. Coffee tells us it is more than three-quarters of a mile east of a north course from the mouth of that creek, and about four miles from thence. It cannot be the place, the distance does not answer; and there is a great variation in the course. If a latitude of three-quarters of a mile be allowed to the east or west, any other greater distance may with equal propriety. The tract of which this is a corner (John Nelson's) calls for the head waters of Richland and Robertson's Creeks. This supposed corner at A is on the waters of Rock Creek of Duck, another watercourse altogether, and is not marked as a corner for the tract, a beech and elm is called for in the grant, the elm is not marked at all, and stands on the opposite side of the branch, where it is not reasonable to suppose a person would call for it for a corner. A tree called for as a corner was surely marked as one. Beside, the beech does not answer the description; though marked as a corner for four tracts, it has more letters than are called for in the grant; viz., W C. The proof produced, so far from showing that this is the south-west corner of Polk's tract, shows that it cannot be. There was not a single corner made at B C nor D, *Page 460 
nor any line marked anywhere, so as to assist in establishing this place. We admit, that if the place at A was clearly established as the corner of the tract, that other corners or lines of the tract not having been marked would not destroy the claim; but that is far from being established.
The English law differs from ours as it respects ejectments. There, a person may recover by showing a right of possession alone, jusintrandi, without any title deeds whatever.[1]
Here, you must cover the possession by title.[2] If it be necessary for the plaintiff to show a title, it must of course be such a one as conforms to the principles of law. It must contain a description sufficiently special to give notice where the land is situated, so that other persons, who might have desired to appropriate vacant lands, could have an opportunity of knowing where it lay, and thus avoid being entrapped. Our law requires that grants and title papers should be registered. What can that be for except to give others, who may be concerned to know, notice where land lies; and who can be more concerned to know, or more affected, than a subsequent enterer? Before the defendants made their entry this land could not be found; it was not on the general plan, and it is manifest that the calls of the grant of Polk and Nelson, to which it refers, never could enable a person to find the corner now claimed.
In this view of the subject it is insisted that we are not bound to notice the calls of any claim but Polk's and Nelson's, to which it refers. Nelson's does not call for any other claim: it is to begin about three and a half miles nearly north from the mouth of Robertson's Creek. The corner A is three-quarters of a mile from that course; the marks there do not agree. It is said that John Armstrong's claim reduces every thing to a certainty, and id certum est quod certumreddi potest. How does this claim do it? By calling to include the mouth of Robertson's Creek? It does not state in what part of the 5000 acre tract it shall be included. Here then is a latitude of 1250 poles to go on nearly four miles; *Page 461 
the mouth of Robertson's Creek might be anywhere within that limit, agreeably to the grant.
In looking for the tract after finding the mouth of Robertson's Creek, you would know that you were then within the bounds of John Armstrong's 5000 acre tract of land, and you might know you were within two miles of some corner, or one mile of some line, but you could not tell where, nor how to find them; this will not fix the corners; going north you cannot find the corner A by three-quarters of a mile, if you did it would not answer the description as to marks; but the most decisive point of all that the[1] grunt would not give notice, is, that the corner, when found, is on the waters of Duck, and not Elk, as called for in their grants; nineteen-twentieths of their land at least lying upon Rock Creek of Duck. The plaintiff might with as much propriety claim lands on Red River one hundred miles north of this place. How could any subsequent locator over suppose, under all these circumstances, that the tree marked at A was Polk's south-west corner, supposing him to have stumbled on it, for it must have been found by accident? The plaintiff's claim does not include a single acre of Robertson's Creek, and but very little of Preston's Creek of Elk. We are told the ridge dividing Duck and Elk is very flat and low at this place, and consequently the surveyor and locator of the land might suppose they were on the waters of Elk.
We are also told that the line which is found marked in going south from A shows that the surveyor was running south, and consequently he might have travelled up Rock Creek. In travelling from Elk, north, it might have been more difficult to tell when you passed the ridge, but not vice, versa. In this country, it will be recollected, that a grant can be legally obtained without an entry under the laws of North Carolina upon removed warrants. There was no record kept of the survey except in the secretary's office of North Carolina, and that has been determined insufficient to afford even constructive notice.[1] The plaintiff had no entry; his grant then afforded us the only means of knowing the situation of his claim, and that alone was to govern our *Page 462 
conduct in entering. It should therefore surely contain as much certainty as an entry. But it was intended by law to contain more. Act 1777, c. 1, §§ 5, 10. Certainty is what the law requires, Plow. 84, 202, and for want of this certainty the reasons for requiring which we have stated the grant is void.
The second ground we take is, that, agreeably to the practice of the State, the younger grant can be given in evidence to defeat an older one, not obtained agreeably to law; on this last ground, then, no doubt can exist respecting the application of our argument, and that the plaintiff cannot recover.
The plaintiff's counsel, in reply, stated that they understood the Court as having already intimated an opinion that the question here was a mere matter of boundary. As to the doctrine of notice, or the notoriety of the calls of the grant, it is entirely out of the question in this action. If we establish this survey as having been made for the plaintiff, it is sufficient. All that we have to do is to satisfy the jury that these are our boundaries. But admitting that you can go into equitable circumstances in a court of law, even on that ground Polk's grant is good. We admit that a title must be shown in this country. Our title is more than twenty years old; when the land was surveyed it was troublesome times with the Indians, — the country a wilderness, but little explored, and mistakes almost unavoidable; and if no mistakes in grants can be overlooked there is not one in a thousand that will stand.[1] Surveyors are public officers appointed by the public, not under the control of the claimants, and it would be highly unjust that their mistakes should prejudice persons whose lands they surveyed, and for this was cited first Haywood, 100, 347, c.[2] But we insist that, if you were to search for the land, the calls are sufficiently special. It is to be nearly north from the mouth of Robertson's Creek; go, then, to the mouth of the creek, and, after going three and a half miles north, look about, and at three-quarters of a mile's distance to the east you find the beginning; this is nearly north, and the claims of Martin Armstrong and John Armstrong prove it to be the *Page 463 
place intended. Robertson, one of the defendants, who was with the party who found the corner, said he believed it was the corner of Polk, and told the plaintiff he would admit it provided he would caveat him.
Some dispute arose as to the amount of the testimony respecting Robertson's admissions or acknowledgments.
[1] 2 Bac. Ab. tit. Ejectment; A. ib. D. 3; 3 East, 355-358.
[2] 2 Hay. 11, 69, 88, 98, 114, 157, 336.
[1] It was so determined with respect to lands in the military boundary, where an office was always open, but this decision did not extend to lands lying within John-Armstrong's bounds. Hickman's Lessee v. Ward, Nashville, Nov. 1804.
[1] See 2 Bay, 539; 2 Binn. 109; Hardin, 436; 2 Hay. 349; 3 Call, 242; 1 Hen. Mun. 177; 2 Bay, 515.
[2] 3 Call, 419; 4 Call. 210, 218; Taylor and Quarles v. Brown S. C. U. S. 1812 MSS.; 3 Binn. 30, 32.
Evidence of admissions can be received in questions of boundary as well as in other cases, but they should be clear and unequivocal

to have any effect. It is always a suspicious kind of evidence and the jury should be convinced that it was the intention of the party to admit a fact, being satisfied of its truth. In this case there does not appear to be a clear admission of the fact, but the jury will judge of this. Admissions of law, or what the law is, have no effect in a court of justice: they are never noticed.[1]
The whole question before the jury depends upon the identity of the survey, or boundaries, of the plaintiff's land. If the jury believe, from the testimony they have heard, that this is the place surveyed for the plaintiff, and granted to him, they will find for him, otherwise for the defendant.
Verdict for the plaintiff.
ORIGINAL NOTE. — The letters A B C D represent the plaintiff's claim; A B S R John Nelson's first tract; A M L G John Nelson's second tract; N O P K his third tract; G H K L represent John Armstrong's; G H J F represent Martin Armstrong's first tract; and A E F G his second tract.
[1] Admissions evidence as to boundary. See 3 Johns. 223, 499; 2 Johns. 120; 2 Dall. 94; 4 Hen. Mun. 194; 2 Hay. 219, in n.; Hardin, 282; Camp. 367; 4 Johns. 143; Gould ed. Esp. N. P. 2 vol. 34. But not evidence as to title. 6 Johns. 19.